UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES MCKEOWN, JACK JONES,
and SHIRLEY PRYOR,

          Plaintiffs,

                                    Case Number 07-12016-BC
v.                                        Honorable Thomas L. Ludington

MARY JANE M. ELLIOTT  P.C.,

          Defendant.
_____ /

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on cross motions for summary judgment.  Plaintiffs Jack McKeown ("McKeown"), Jack Jones ("Jones"), and Shirley Prior ("Prior") (collectively "Plaintiffs") brought three claims arising from attempts by Defendant Mary Jane Elliott, P.C. ("Defendant") to collect Plaintiffs' outstanding consumer debts.  Plaintiffs alleged two violations of the Fair Debt Collection Practices Act ("Act"),  15 U.S.C. §§ 1692c(a)(2), 1692e(5), and one claim under a similar Michigan consumer protection act barring misleading collection practices, Mich. Comp. Laws §§ 339.915(e), 445.252(e).  On November 15, 2007, the Court held a hearing on cross motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56.

I

Plaintiffs filed the instant action alleging that Defendant violated federal and state law by (1) contacting Plaintiffs after Defendant became aware that they were represented by counsel and (2) attempting to collect debts in a deceptive manner.  Plaintiffs seek statutory damages for each violation, costs, and attorney's fees.  The parties are largely in agreement on the operative facts

underlying this litigation.

Plaintiffs each incurred their outstanding debt as the result of consumer credit cards obtained from retailers Wal-Mart or Meijer Foods. Plaintiffs all reside in Michigan and incurred their respective debts in Michigan. The creditors retained Defendant, a Michigan law firm, to collect Plaintiffs' debts. Defendant initiated a series of communications to Plaintiffs, via mail and telephone, to McKeown, Jones, and Prior. Plaintiffs contend that each was represented by an Illinois attorney, Jeff Whitehead ("Whitehead"), the supervising attorney for Legal Advocates for Seniors and People with Disabilities ("LASPD"). It is uncontested that Whitehead is a licensed attorney admitted to practice in Illinois, but not in Michigan.

According to the complaint, Whitehead faxed a letter to Defendant on October 16, 2006 ("Representation Letter"). It stated:

> Re:     James McKeown
>         Creditor: GE Money Bank/Walmart
>         Account Number:     N6102216
>
> Dear Sir or Madam,
>
> Legal Advocates for Seniors and People with Disabilities (a division of the Chicago Legal clinic) *provides limited representation to individuals* whose income and assets are protected by law. Our client has advised me that your office is considered taking legal action on behalf of the above-mentioned creditor to collect an outstanding balance due. *My objective is to try to persuade you to cease any further collection activity* because my client's income and assets, if any, are protected by law.
>
> We have indicated to our client that most creditors will not pursue a consumer debt if the creditor is aware of all the pertinent facts that may render the debt uncollectible. A such, I am prepared to furnish you with any other appropriate information you may require.
>
> Thank you in advance for your cooperation.
>
> Very Truly Yours,
> Jeff Whitehead

Supervising Attorney

*Complaint Exhibit 1* (emphasis added).

On January 8, 2007, Defendants mailed a settlement letter to McKeown ("Settlement

Letter").  It stated:

## \*\*\*25% OFF\*\*\*
# YOUR OUTSTANDING GE MONEY BANK BALANCE

<u>TO ACCEPT THIS OFFER YOU MUST CALL THIS OFFICE WITHIN 21 DAYS OF THE DATE
OF THIS LETTER TO OBTAIN A SETTLEMENT AMOUNT</u>

Upon receipt of your timely settlement . . . we will do the following:
1.  Advise our client that we have received the settlement so that they can update their reports (if
any) to the credit reporting agencies to indicate that the debt is settled in full.
2.  Send you a settled in full letter for your file.
3.  If suit has been filed against you but no judgment filed, we will dismiss the lawsuit.
4.  If judgment has been entered, we will prepare and file a Satisfaction of Judgment and send you
a court stamped copy for your file.

Please be advised that this settlement offer is not intended as a stay of current legal activity.

\* \* \*

If at any time this office receives funds held under the state income tax credit/refund for the current
year, that will also be considered as payment in addition to the settlement payment.  Please contact
this office without delay if you have any questions concerning this offer.  If we do not receive your
settlement amount by the acceptance date, this offer is revoked.

Sincerely,
Mary Jane M. Elliott

*Complaint Exhibit 2*(emphasis in original).

On February 2, 2007, Whitehead faxed a second letter to Defendant.  For the most part, it

was similar to the McKeown representation letter.  It stated in relevant part that "[t]he above party

(James McKeown) has advised me that your office is considering taking legal action on behalf of

your client to collect an outstanding balance due . . . my client's income is protected by federal law,

pursuant to 42 U.S.C. 407(a) and /or 42 U.S.C. 1383(d)(1)." *Complaint Exhibit 3*. Again, it repeated that "[LASPD] provides limited representation to individuals." *Id.* McKeown alleges that Defendant telephoned him regarding the debt in March and April of 2007.

With regard to Jones, Defendant sent a settlement letter on February 7, 2007 that was nearly identical to the settlement letter sent to McKeown. *Complaint Exhibit 4*. On March 9, 2007, Whitehead mailed a representation letter similar to that of McKeown's representation letter. It indicated that LASPD "provides limited representation" and that "my client's" income is protected by federal law. It also stated that "[t]he above party has advised me that your office is considering taking legal action on behalf of your client to collect an outstanding balance due." Jones alleges that Defendant contacted him numerous times after Whitehead sent the representation letter.

Finally, with regard to Pryor, Whitehead sent a similar letter of representation on March 6, 2007. *Complaint Exhibit 6*. Similarly, it stated that LASPD provided "limited representation to individuals whose income is protected by law" and that his "client's only source of income . . . is protected by federal law." It also stated that "[t]he above party has advised me that your office is considering taking legal action on behalf of your client to collect an outstanding balance due." Defendant sent Pryor a settlement letter, identical to the others, on March 8, 2007.

In her affidavit, Pryor explained that Defendant's employee called Pryor after Whitehead faxed the letter of representation and she informed the employee that she was represented by an attorney. *Pl. Summ. Judg. Exhibit D* at ¶ 3. She further explained that the employee told her that it was not illegal to call her. *Id.* at ¶ 4. Pryor stated that Defendant's employee called her again on August 29, 2007, but the employee hung up after Pryor informed the employee that she was represented by an attorney.

Plaintiffs contend that each was represented by Whitehead at the time Defendant directly mailed the settlement letters. According to his affidavit, Whitehead is the supervising attorney for LASPD, which provides "limited legal representation to seniors and disabled persons." *Whitehead Affidavit* at ¶¶ 4, 19. "LASPD serves as an intermediary between our clients their creditors and debt collectors collecting upon those debts, providing them information regarding the client's finances." *Id.* at ¶ 21. Whitehead stated that he reviews applications of potential clients and if he decides to "extend services to the client," then LASPD will send a letter to creditors. *Id.* at ¶ 6, 7. If a creditor calls Whitehead, his staff collects relevant information regarding the debt that the creditor seeks to collect, including the debtor's name, account number, and original creditor. *Id.* at ¶ 12. In response to creditor inquiries, LASPD usually sends creditors a cover letter, a power of attorney, and a letter of representation. *Id.* at ¶¶ 13-14.

In his affidavit, Whitehead stated that he received a phone message from Defendant with regard to Pryor. *Id.* at ¶ 16. In response, Whitehead drafted a response letter on March 6, 2007. *Id.* at ¶ 17. Whitehead's affidavit did not refer to McKeown or Jones, nor did it specifically state that he represented any Plaintiffs, even in a limited manner. Additionally, it does not indicate that he executed a letter of representation or power of attorney with regard to Plaintiffs.

Defendant's managing partner, Mary Jane Elliott ("Elliott"),[1] stated in her affidavit that she sent the settlement letter to Pryor before she received the letter of representation regarding Pryor and that she made no further attempts to communicate with Pryor. *Def. Summ. Judg. Exhibit A* at ¶ 5. She also explained that she determined that Whitehead was not admitted to practice in Michigan and

---

[1] The named Defendant in this matter is Mary Jane M. Elliott, P.C. Plaintiffs did not name Mary Jane Elliott, individually. As such, all reference to Defendant is that of the law firm, itself. Reference to "Elliott" is intended to refer to her testimony as a witness.

telephoned Whitehead to ascertain whether he was admitted to the Michigan Bar. *Id.* When she called Whitehead's office, the person that answered the telephone would not let her speak to Whitehead. *Id.*

According to Whitehead's affidavit, he does not answer telephone calls, unless the answering service determines that he should accept the call. *Pl. Summ. Judg. Exhibit B* at ¶ 11. Otherwise, a telephone service answers the telephone, forwards messages to him, and he reviews them, and forwards them to his associate. The associate then responds as he or she deems appropriate.

According to the affidavit of an employee of Whitehead's answering service, its records indicate that Elliott called and requested to speak with Whitehead on March 6, 2007. The answering service had a policy that the person that answered the phone would tell the caller that Whitehead was unavailable and send Whitehead an email with the phone message.

Plaintiffs filed the instant suit alleging three causes of action. First, Plaintiffs allege that Defendants violated the Federal Debt Collection Protection Act ("FDCPA") by contacting Plaintiffs after Defendant became aware Whitehead represented them. 15 U.S.C. § 1692c. Second, Plaintiffs claim that Defendant's settlement letters violated the FDCPA as they were deceptive and provided a false representation of the legal status of the debt. 15 U.S.C. § 1692e. Third, Plaintiffs contend that Defendant's settlement letters also violated Michigan law, which similarly protects against deceptive statements and misrepresentations of the status of legal action being taken against the debtor. Mich. Comp. Laws §§ 339.915(e), 445.252(e).

## II

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. Under Rule 56(c), a court must review

"pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252."[T]he party opposing the summary judgment motion must 'do more than simply show that there is some "metaphysical doubt as to the material facts."'" *Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## III

The Court has subject matter jurisdiction over the matter pursuant to Plaintiff's causes of action brought under federal law. 28 U.S.C. § 1331. The Court may exercise pendent jurisdiction

over Plaintiffs' related state claim and the Court must apply Michigan law to those claims. 28 U.S.C. § 1367; *see generally Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938).

A

The parties contend that under the FDCPA each is entitled to summary judgment. The Sixth Circuit recognized that

> Congress enacted the FDCPA in order 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.' 15 U.S.C. § 1692(e).

*Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 508 (6th Cir. 2007) (quoting 15 U.S.C. § 1692e. Though the FDCPA is intended to provide protection to consumers, it is not wholly "one-sided" in favor of consumers. *Federal Home*, 503 F.3d at 510. Consistent application of the FDCPA promotes "standards [] intended to protect collectors against bizarre or idiosyncratic interpretations of collection notices." *Federal Home*, 503 F.3d at 510. Thus, courts are to apply the FDCPA "with some circumspection." *Id.* With that in mind the Court turns its attention to the claims at hand.

"[A] debt collector may not communicate with a consumer in connection with the collection of debt if the debt collector knows the consumer is represented by an attorney with respect to such debt . . . " 15 U.S.C. § 1692c(a)(2). If the attorney representing the debtor fails to respond to a communication from the debt collector "within a reasonable period of time," then the debt collector may contact the debtor. *Id.* It is the plaintiff's burden to demonstrate that an attorney represented the plaintiff with respect to the debt and that the debt collector had "actual knowledge" of the representation. *Hubbard v. Nat'l Bond and Collection Associates, Inc.,* 126 B.R. 422, 426 (D. Del.

1991).

Defendant contends that Whitehead did not represent Plaintiffs within the meaning of the FDCPA. Defendant's first argument is that Whitehead was unable to represent Plaintiffs because he was not admitted to practice law in the state of Michigan. Defendant did not offer any authority that Congress intended to limit the meaning of "represented by an attorney" only to attorneys admitted to practice in the jurisdiction where the debt was incurred. Having already recognized Congress' intent to eliminate abusive debt collection practices, the Court finds no indication that Congress enacted the FDCPA to prevent out-of-state attorneys from providing legal advice. Thus, Defendant's first argument is without merit.

Defendant's second argument is that Plaintiffs were not represented by an attorney with respect to the debt because Whitehead only provided "limited representation." As stated above, the burden is on Plaintiffs to demonstrate that each was in fact represented by an attorney with respect to the debt and that Defendant's had "actual knowledge" such representation. Evaluating the evidence in a light most favorable to Plaintiffs, Defendant's argument is persuasive.

From Plaintiffs' perspective, Whitehead's letter established that he represented each Plaintiff "with respect to such debt." First, each of Whitehead's letters to Defendant stated that LASPD provides "limited representation." It refers to each Plaintiff as "my client," references the legal action with respect to the debt that Defendant sought to collect, and it states that Whitehead was the "supervising attorney" of legal advocates.

Looking at the omissions in the letters, coupled with the surrounding facts, the Court finds that Plaintiffs are unable to demonstrate that Defendants had actual knowledge that Whitehead represented each Plaintiff "with respect to such debt." First, the representation letters themselves,

are ambiguous at best. At no point does Whitehead unequivocally state that he represents Plaintiffs with respect to the debt. The letters contain words indicating possible representation, but do not clearly state so. For example, the reference to LASPD's "limited representation" does not clearly indicate the scope of representation. Moreover, in the McKeown Representation Letter, Whitehead states that his "objective is to try to persuade you to cease any further collection activity."

Defendant's phone call to Whitehead underscores the murky nature of his relationship with his putative clients. Defendants called LASPD to ascertain Whitehead's status to practice law and determine the scope of his representation. The affidavits submitted in support of Plaintiffs' motions indicate that Whitehead purposely avoids phone calls from collection agencies. The affidavits state that the answering service is to indicate to the caller that Whitehead is unavailable, whether or not that is true, and to simply request contact information. Whitehead reviews the message and has an associate respond to the telephone inquiry. In this case, the answering service acknowledged that it received a telephone call from Defendant. In response, Whitehead mailed a similar letter, repeating the ambiguous "limited representation" phrase without any explanation of the limits placed on Whitehead's authority to represent Plaintiffs.

Factually, Plaintiffs can not demonstrate a prima facie case showing that Defendant had "actual knowledge" that Whitehead represented Plaintiffs "with respect to such debt." In fact, Defendant took affirmative steps to clarify the scope of the representation. The ambiguous nature of the correspondences placed Defendant in a precarious situation. Just as it is a violation to communicate directly with a debtor represented by an attorney, it is also a violation under the FDCPA for a debt collector to communicate with any person other than the debtor or his attorney "in connection with the collection of any debt." 15 U.S.C. § 1692c(b). Whitehead's ambiguous

letter and confusing non-responsive communications placed Defendant in a position where it was possible that a call to either Whitehead or Plaintiffs could reasonably violate alternate provisions of the act. The FDCPA places the burden on the debtor to demonstrate that he or she was represented with respect to the debt and the creditor had actual knowledge of the representation to avoid such a problem.

Finally, Whitehead's affidavit contradicts the notion that he represented Plaintiffs "with respect to such debt." First and foremost, Whitehead's affidavit never affirmatively states that he was representing Plaintiffs. Additionally, Whitehead affirmed that LASPD normally executes a power of attorney and client agreement with a client, which it then forwards to the debt collector. In this case, he did not execute such documents with respect to Plaintiffs, nor did he forward them to Defendant. Additionally, Whitehead acknowledged in his affidavit that LASPD's answering service notified him on March 6, 2007 that Mary Jane Elliott called with regard to Pryor. In response, Whitehead drafted another letter that repeated the "limited representation" language, yet never returned the phone call.

As discussed above, the burden is on each Plaintiff to establish that each was represented by an attorney and that Defendant had actual knowledge of the representation. Plaintiffs McKeown and Jones claims pursuant to 15 U.S.C. § 1692c rely entirely on the correspondences as discussed above. As such, the evidence viewed in the light most favorable to McKeown and Jones, does not establish a triable issue of fact that each was represented by an attorney, or that Defendant had actual knowledge of same. Thus, the Court will grant Defendant's motion for summary judgment with respect to McKeown and Jones.

Pryor's affidavit, however, establishes a triable issue of fact. Her affidavit stated that she

informed Defendant's employee that she was represented by an attorney during a phone call. It further stated that Defendant did not cease the communication during that call and made additional calls to Prior, thereafter. As such, there is a triable issue of fact with respect to Pryor's claim pursuant to 15 U.S.C. § 1692c and, thus, the Court will deny Defendant's motion with respect to her. In light of the Court's analysis of Plaintiffs' claims, it will also deny Plaintiffs' motion for summary judgment with respect to their claims pursuant to 15 U.S.C. § 1692c.

B

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This includes "the false representation of the character, amount, or legal status of any debt . . . or [t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(2,5). "Congress intended [§ 1692e] to eliminate unfair debt-collection practices, such as late-night telephone calls, false representations, and embarrassing communications." *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 398 (6th Cir. 1998).

"In determining whether a debt collector's practice is deceptive within the meaning of the [FDCPA], courts apply an objective test based on the understanding of the least sophisticated consumer." *Lewis*, 135 F.3d at 400. Though the standard is that of the least sophisticated consumer, the communication is to still be carefully viewed in its entirety. *Federal Home*, 503 F.3d at 511.

Plaintiffs contend that the settlement letters violated § 1692e in three ways. First, the reference in the letters to lawsuits "explicitly states that legal activity is ongoing." *Complaint* at ¶ 53. Second, the reference in the settlement letter to tax garnishment falsely implied that Defendant

was able to obtain a garnishment within twenty-one days or without filing suit.  Third, that the offer to settle the debt for "25% off" without stating the amount of debt was a false representation of the amount owed.

Defendants moved for summary judgment contending that the plain language contained in the letters did not violate the FDCPA and that it is entitled to summary judgment to each of Plaintiffs' claims under § 1692e.  Plaintiffs moved for summary judgment contending the opposite.

First, the letter states that it is an offer to settle and repeatedly uses the term settlement. Upon review of the correspondences, all references to legal action is framed in the light of possibility, as each reference is predicated by "if."  Specifically, the letters stated "[i]f suit has been filed against you but no judgment filed, we will dismiss the lawsuit."  It does not state that a lawsuit has or will be filed.  Moreover, the reasonable implication is that any legal action will cease if the settlement is accepted.  Thus, viewing the settlement letters carefully and in their entirety under the "least sophisticated consumer" standard, the letter is not deceptive or misleading that Defendant has filed a lawsuit.

Plaintiffs' next argument with regard to garnishment founders for similar reasons.  Plaintiffs contend that "the letters falsely state that [Defendant] can obtain a tax garnishment within the 21-day time period in which the consumer can accept the offer." *Pl. Summ. Judg.* at 18.  That argument may be meritorious, if the letters actually made that statement.  Instead, on the third line of the letter it states that Plaintiffs had twenty-one days to accept the offer before it was revoked.  Then, in the final paragraph, it states "[i]f at any time this office receives funds held under the state income tax credit/refund for the current year, that also will be considered as payment in addition to the settlement amount."  Again, viewing the letter in its entirety under the least sophisticated consumer

standard, those statements do not objectively infer that Defendant can obtain a garnishment within twenty-one days.  In fact, the garnishment warning places the debtor on notice that he or she will not receive a refund in the event Defendant receives payment from a garnishment after settling the matter.

Additionally, Plaintiffs contend that the reference to garnishment is deceptive because it infers that Defendant can obtain a tax garnishment without filing suit prior to consumer's acceptance of the offer to settle.  *Id.*  As stated above, this appears to be a warning that Defendants will not return a portion of the settlement if wages are garnished.  Again, this argument draws an inference that does not appear to be likely, even under the applicable standard.

Finally, the Court finds that a triable issue exists as to whether the offer to settle the matter for "25% off" was deceptive.  Defendant contends that though the letter does not state the amount owed, it is not deceptive as it merely states an offer to settle for a reduced amount.  An offer to settle 'present[s] only carrots, not sticks.  A debt collector need not make any offer to settle at a discount, and a debtor who ignores one of these letter is in precisely the same position she was in before the letter arrived."  *Headen v. Asset Acceptance, LLC*, 383 F.Supp. 2d 1097, 1103 (S.D. Ind. 2005). Though the Court can envision a set of circumstances in which an offer to settle at a discount preceded by prior or contemporaneous communications about the amount of the debt, the record in this instance is incomplete for the Court to determine the question as a matter of law.

Thus, the Court will deny both motions with respect to the claims pursuant to 15 U.S.C. § 1692e that Defendant's offer of settlement for "25% off" is deceitful.   The Court, however, will grant Defendant's motion for summary judgment with respect to Plaintiffs' remaining claims under Count II.

Plaintiffs' final claim alleges that Defendant falsely implied that legal action had begun in violation of Michigan law. Under Michigan's Occupational code and Trade and Commerce Code, a debt collector is barred from "making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt." Mich. Comp. Laws §§ 339.915(e), 445.252(e).

As a threshold matter, the Court must determine whether either of these provisions apply to Defendant, a law firm. Defendant contends that it is not a "collection agency" as defined in § 339. According the definitions set forth in the statute, a "[c]ollection agency does not include a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency such as . . . [a]n attorney handling claims and collections on behalf of clients and in the attorney's own name. Mich. Comp. Laws § 339.901(b)(xi). In contrast, a regulated person under the § 445 is "a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency including . . . [a]n attorney handling claims and collections on behalf of a client and in the attorney's own name." Mich. Comp. Laws § 445.251(g)(xi).

Defendant's collection activities were on behalf of a client and Defendant does not fit within the meaning of a collection agency outlined in § 339. On the other hand, Defendant fits squarely within the definition set forth under § 445.

The Court having found that § 445.252(e) applies to Defendant, its analysis is similar to that under § 1692e of the FDCPA, both of which bar misleading and deceptive communications. The parties did not identify any legal authority distinguishing the standard applicable to the Michigan causes of action from the federal standard. In light of the similarity between 15 U.S.C. § 1692e and

these causes of action, it appears appropriate to view Plaintiff's claims under the same "least sophisticated consumer" standard. As such, the Court's analysis is the same concerning threatened "legal action, as all mention of legal action is preceded by the word "if." As such, the Court will grant Defendant's motion with respect to Count III.

IV

Accordingly, it is **ORDERED** that Defendant Mary Jane M. Elliiott P.C.'s motion for summary judgment [dkt. # 12] is **GRANTED** in part and **DENIED** in part. The motion is granted with respect to the Count I claims of Plaintiffs James McKeown and Jack Jones in their entirety, with respect to the Count II claims predicated on "legal action" and "garnishment" of all Plaintiffs, and with respect to the Count III claims of all Plaintiffs in their entirety. The motion is denied with respect to Plaintiff Shirley Pryor's claim in Count I, and with respect to Plaintiffs' claims in Count II predicated on the "25% off" settlement offer as a violation of 15 U.S.C. § 1692e.

It is further **ORDERED** that Plaintiffs' motion for summary judgment [dkt. # 23] is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: December 10, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 10, 2007.

s/Tracy A. Jacobs
TRACY A. JACOBS